MABEL E. HAYWARD *vs.* MAY E. GIRARD *et al., Coex'rs.*

JULY 28, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This action of assumpsit on a disallowed claim against an estate was heard before a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiff for $13,370. The case is before us on the defendants' sole exception to the refusal of the trial justice to grant a new trial.

The plaintiff brings this suit in her individual capacity and as sole heir of her mother Bertha Davis, who died in the city of Cranston on January 3, 1914. The defendants are the coexecutors of the estate of Henry N. Girard, late of the town of North Kingstown, deceased. It is agreed that the claim was properly filed and was disallowed in the probate court. The question as to whether plaintiff was a proper party to maintain this action was not raised by defendants and the statute of limitations was not pleaded as a defense. The case was tried solely on the issue as to whether

plaintiff had a valid claim against the estate of Henry N. Girard.

The plaintiff testified that her mother told her that in 1907 she had loaned Girard the sum of $7,000 from her accumulated life savings, which included an inheritance from a cousin in Florida; that the money was not loaned at one time but in varying amounts of $500, $300 and $200; and that her mother had a number of receipts from Girard which were kept in a strong box which came into plaintiff's possession after her mother's death. The plaintiff further testified that in the 1938 hurricane the house in which she lived was "taken down the cove ready to go down the Bay"; that she was never able to locate the box thereafter; that she had seen the receipts in such box before this disaster; and that they "amounted to Seven Thousand Dollars, *as I can recall.*" (italics ours)

The plaintiff also stated that she had often talked with Girard about these loans; that he never denied them but kept putting her off with such statements as "I will pay you" and "Have faith in me, I will do the right thing, I will pay you"; and that when she threatened to sue him he said: "I will write you a letter of proof."

In support of her claim plaintiff introduced in evidence a typewritten letter dated October 27, 1948, purporting to be signed by Girard and in which he allegedly admitted having received "thousands of dollars" from plaintiff's mother which had never been repaid. This letter also contained among others the following statements relative to the claim here involved: "When I needed money way back in 1907, she came to my rescue, and loaned me 'thousands of dollars,' which I failed to pay her back. * * * The money I borrowed from her, was only loaned to me in good faith. I never paid her back."

To prove the authenticity of Girard's signature on this letter, plaintiff presented a nationally recognized handwriting and document expert, who expressed the positive opin-

ion that the signature on the typewritten letter, introduced as plaintiff's exhibit 1, was that of Henry N. Girard. She reached this conclusion after a comparison of this signature with several admittedly genuine signatures of Girard on other instruments. Although defendants argue that the signature here involved was not genuine but "traced," no testimony, expert or otherwise, was presented to refute the testimony of plaintiff's expert.

The defendants contend that the verdict clearly indicated that it was a "compromise" and therefore should be set aside. They argue that such verdict should either be for the defendants on the ground that no liability had been established, or for the plaintiff in a sum almost double that of the verdict of the jury.

In support of their contention they cite *Riley* v. *Tsagarakis*, 53 R. I. 261, and *Gartner* v. *Saxon*, 19 R. I. 461. In our opinion these cases are clearly distinguishable from the instant case. In the *Riley* case the evidence as to the amount of damages was definite and uncontradicted, namely, $11,000, and the verdict of the jury was for $5,000. In the *Gartner* case the verdict was clearly against the evidence. Substantial damages were fully proven, but the verdict was for only $1. In both of these cases a new trial, at least on the question of damages, was unquestionably called for.

In the instant case there was no such discrepancy between the amount of the principal indebtedness and the verdict as there was in the amount of damages established in the two cases referred to above. The plaintiff here claimed that the total of the various sums loaned by her mother and the aggregate of the receipts which she was unable to produce was "Seven Thousand Dollars, as I can recall." Moreover the alleged letter from Girard acknowledged an indebtedness to plaintiff's mother, and while it did not state the exact amount it referred to "thousands of dollars."

If the jury believed that the signature of Girard on the letter of October 27, 1948 was genuine, liability at least to

the extent of "thousands of dollars" was thereby clearly established. To reach the exact amount of the claim, the jury was entitled to take into consideration certain other factors introduced in evidence such as the age of the claim, the degree of certainty of plaintiff's recollection, the effect of the hurricane, and the credibility of plaintiff which defendants sought to impeach through her admission that she had served a year in jail on an indictment returned in 1935 for receiving stolen goods.

In his denial of the motion for a new trial the trial justice expressed his unqualified approval of the verdict and stated that if he were the trier of the facts he would have found as the jury did, namely, that on the testimony of plaintiff's expert, Girard wrote the letter referred to above.

From our own analysis of the verdict it would appear that the alleged discrepancy relates to the item of interest awarded by the jury, rather than to the principal. If the jury had awarded the $7,000 claimed by plaintiff and added simple interest from the date of the hurricane in 1938, perhaps on the theory that Girard's letter seemed to corroborate plaintiff's claim as of 1938, then the amount so computed would bring the total indebtedness to about $13,720 or close to the jury's actual award. On the other hand if interest had been computed similarly from 1907, the date of the alleged loan, the total sum would be about $26,740 or twice the amount of the jury's verdict and approximately the amount which the trial justice indicated he could have supported.

It seems, therefore, reasonably clear that the jury awarded interest from 1938 rather than from 1907. But in such circumstances we see no compromise on the liability for the principal indebtedness and no prejudice to the defendants because the jury awarded less interest than they might have given. In fact if any party were prejudiced it would be the plaintiff, since the trial justice clearly indicated that he would have given his unqualified approval to a verdict in

the larger sum. However, the plaintiff has accepted the verdict and has prosecuted no exception asking for relief on the question of damages.

We have repeatedly held that the verdict of a jury which is fully approved by the trial justice is entitled to great weight and should not be set aside unless clearly wrong. *Wine* v. *Lovett,* 80 R. I. 425; *Petrarca* v. *McLaughlin,* 75 R. I. 1. We have therefore carefully examined the transcript and the exhibits filed herein, and from such examination we cannot say that the decision of the trial justice denying the defendants' motion for a new trial was clearly wrong.

The defendants' exception is overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*J. Frederick Murphy,* for plaintiff.

*William H. Leslie, Jr.,* for defendants.